1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>     v.<br><br>APPROXIMATELY $189,626.34 SEIZED FROM BANK OF AMERICA ACCOUNT NUMBER ********8881, HELD IN THE NAME OF TRUCKING LOGISTICS, LLC, et al.,<br><br>        Defendants. | No. 1:22-cv-00975-JLT-BAM<br><br>**FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S *EX PARTE* MOTION FOR DEFAULT JUDGMENT AND FINAL JUDGMENT OF FORFEITURE**<br><br>(Doc. 25) |

In this civil forfeiture action, Plaintiff United States of America ("Government" or "Plaintiff") seeks (1) default judgment against the interests of Trucking Logistics, LLC, Byrons Property Management, LLC, Juliette Property Management, LLC, A Smith Consulting, LLC, Glory Denim, LLC, Ashley Property Management, LLC, and Moseley Medical Services, LLC; and (2) entry of a final forfeiture judgment to vest in the Government all right, title and interest in the approximately $189,626.34 seized from Bank of America account number ending in 8881, approximately $176,980.00 seized from Bank of America account number ending in 1441, approximately $87,340.00 seized from Bank of America account number ending in 7917, approximately $148,380.00 seized from PNC Bank account number ending in 8709, approximately $129,716.51 seized from PNC BANK account number ending in 5621, approximately $29,651.83 seized from PNC BANK account number ending in 9445, and approximately $28,730.22 seized from PNC BANK account number ending in

5951 (hereinafter "defendant funds").  No opposition to the Government's motion has been filed, and the time in which to do so has passed.

Having considered the Government's *ex parte* motion and the record in this matter, and for the reasons set forth below, the Court will recommend that the Government's motion for default judgment and for final judgment of forfeiture be granted.

## FACTUAL BACKGROUND[1]

This is a civil action *in rem* to forfeit to the Government the defendant funds pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), on grounds that the defendant funds constitute or are derived from proceeds traceable to violations of 18 U.S.C. § 1343.  The approximately $189,626.34 from Bank of America account number ********8881, the approximately $176,980.00 from Bank of America account number ********1441, and the approximately $87,340.00 from Bank of America account number ********7917, were seized by the U.S. Secret Service ("USSS") on or about April 21, 2022, pursuant to federal seizure warrants. The approximately $129,716.51 from PNC Bank account number **-****-5621, the approximately $28,730.22 from PNC Bank account number **-****- 5951, and the approximately $29,651.83 from PNC Bank account number **-****-9445, were seized by the USSS on or about April 22, 2022, pursuant to federal seizure warrants. The approximately $148,380.00 from PNC Bank account number **-****-8709 was seized by USSS on or about May 9, 2022, pursuant to a federal seizure warrant.

Beginning on or about July 27, 2021, Kings County enlisted Tehachapi, California-based construction contractor Bowe Contractors, Inc. ("BCI") to perform a remodel and expansion of the Kings County Juvenile Detention Center.  The contract was valued at $16.5 million dollars.

Between August and December 2021, Kings County made periodic payments to BCI on the contract using paper checks that were mailed to BCI.

On October 7, 2021, Kings County received an email from kbowe@bowecontractorsinc.com. Karen Bowe is BCI's Chief Financial Officer.  The email informed Kings County that BCI had changed banks and that future payments on the contract should be sent electronically.  Attached to the

---

[1] The factual background is derived from the allegations in the Government's verified complaint.  (Doc. 1.)

email was a document containing instructions for future electronic funds transfer ("EFT") payments that referenced a JPMorgan Chase bank account as the purported new BCI account where payments were to be sent.  On October 13, 2021, Kings County received a second payment request from kbowe@bowecontractorsinc.com. This request changed the receiving account to JPMorgan Chase Bank account number *****5973 ("JPM Account").

On December 1, 2021, Kings County acted according to the October 7 and October 13, 2021 emails and initiated an EFT payment to the JPM Account in the amount of $893,754.82.  The intended recipient of the $893,754.82 payment was BCI.

Beginning on or around December 2, 2021, Karen Bowe contacted Kings County's Finance Department to advise it that BCI had not received its latest payment.  By December 8, 2021, Kings County suspected that the EFT request changing the payment method from paper checks to EFT was not authorized by BCI.  Karen Bowe's actual email address was kbowe@bowecontractors.com, whereas the October 7 and October 13, 2021 emails used the email domain "bowecontractorsinc."

According to JPMorgan Chase records, the JPM Account was held by a Pennsylvania real estate company with a business address at an apartment in Philadelphia, Pennsylvania that filed its articles of incorporation in Delaware on or around September 15, 2021.  The JPMorgan Account was opened on October 6, 2021, and closed on December 31, 2021.  The signature card identified C.T. as the only authorized signatory to the JPM Account.  On or about December 1, 2021, Kings County's payment of $893,754.82 was deposited into the JPM Account.  Prior to this deposit, the JPM Account had a negative balance of -$8.49.

JPMorgan Chase records revealed that, on or about December 1, 2021, the following checks were signed by C.T. and issued from the JPM Account to Bank of America utilizing the Kings County funds:

| JP Morgan Chase Account Number 775025973 Check Transaction Details to BofA | | | | |
|---|---|---|---|---|
| Date | Check Number | Amount | Payee | Depository Bank |
| 12/2/2021 | 97 | $176,980.00 | Byrons Property Management LLC | Bank of America ********1441 |
| 12/2/2021 | 98 | $189,780.00 | Trucking Logistics LLC | Bank of America ********1441 |
| 12/2/2021 | 4893 | $87,340.00 | Juliette Property Management LLC | Bank of America ********7917 |

3

JPMorgan Chase records revealed that, on or about December 1, 2021, the following checks were signed by C.T. and issued from the JPM Account to PNC Bank utilizing the Kings County funds:

| JP Morgan Chase Account Number 775025973 Check Transaction Details to PNC | | | | |
|---|---|---|---|---|
| Date | Check Number | Amount | Payee | Depository Bank |
| 12/2/2021 | 99 | $145,980.00 | Ashley Property Management LLC | PNC Bank **-****-9445 |
| 12/2/2021 | 4891 | $148,380.00 | A Smith Consulting LLC | PNC Bank **-****-8709 |
| 12/2/2021 | 4892 | $132,740.00 | Glory Denim LLC | PNC Bank **-****-5621 |

On or about December 8, 2021, law enforcement interviewed Bank of America ("BofA") representatives. A BofA representative confirmed that the above-identified BofA accounts cumulatively maintained approximately $454,000.00 of Kings County's funds.

As of approximately December 8, 2021, the BofA account records revealed that, after receiving the December deposits of JPM Account check numbers 97, 98, and 4893, the associated payee accounts did not receive additional deposits, were not depleted, and continued to contain the funds that originated from Kings County's payment into the JPM Account, except for a pre-deposit depletion of $153.66 from BofA account number ********8881.

On or about December 8, 2021, law enforcement interviewed PNC Bank ("PNC") representatives. A PNC representative confirmed that the above-identified PNC accounts cumulatively maintained approximately $359,851.77.

As of approximately December 8, 2021, the PNC account records revealed that after receiving the December deposits of JPM Account check numbers 99, 4891, and 4892, the associated payee accounts received minimal deposits, an aggregate total less than $600 for all accounts, were not depleted, and thus continued to contain the funds that originated from Kings County's payment into the JPM Account.

On January 12, 2022, law enforcement interviewed Karen Bowe at BCI. She denied any knowledge of or relationship with the Pennsylvania real estate company that held the JPM Account or C.T. She also denied authorizing C.T. to send or receive any funds on behalf of herself or BCI. She

also denied knowledge or any relationship with any of the payees who received from C.T. or the JPM Account.

On April 8, 2021, the Government obtained federal seizure warrants for the defendant funds (1:22-SW-00185-BAM, 1:22-SW-00186-BAM, 1:22-SW-00187-BAM, 1:22-SW-00188-BAM, 1:22-SW-00189-BAM, 1:22-SW-00190-BAM, and 1:22-SW-00191-BAM).

On April 21, 2022, the USSS seized $189,626.34 from BofA account number ********8881 held in the name of Trucking Logistics LLC, which is registered in Pennsylvania. The BofA account for Trucking Logistics LLC was opened on or about March 2, 2021, as a single member LLC by J.E. Jackson. The only deposit in the LLC's account in December 2021 was from the check issued by C.T. from the JPM Account.

On April 21, 2022, the USSS seized $176,980.00 from Bank of America account number ********1441 held in the name of Byrons Property Management LLC registered in New Jersey. The BofA account for Byrons Property Management LLC was opened on or about March 27, 2021, as a single member LLC by B. Spencer. The only deposit in the LLC's account in December 2021 was from the check issued by C.T. from the JPM Account.

On April 21, 2022, the USSS seized $87,340.00 from BofA account number ********7917 held in the name of Juliette Property Management LLC registered in New Jersey. The BofA account was opened on or about August 31, 2021, as a single member LLC by J.M. Jackson. The LLC was registered in New Jersey in July 2021. The only deposit in the LLC's account in December 2021 was from the check issued by C.T. from the JPM Account.

On April 22, 2022, the USSS seized $129,716.51 from PNC Bank account number **-****-5621 held in the name of Glory Denim LLC. The PNC Bank account was opened on October 5, 2021, by S.J. James as an S corporation LLC. The only deposit in the LLC's account in December 2021 was from the check issued by C.T. from the JPM Account.

On April 22, 2022, the USSS seized $29,651.83 from PNC Bank account number **-****-9445 held in the name of Ashley Property Management LLC. The PNC Bank Account was opened on October 9, 2021, by A. N. June as an S corporation LLC. The only deposit in the LLC's account in

December 2021 was from the check issued by C.T. from the JPM Account. Additionally, the PNC records demonstrated that on December 7, 2021, Ashley Property Management LLC withdrew $30,032.00 from its account that subsequently was deposited into Moseley Medical Services LLC's PNC Bank account **-****-5951.

On April 22, 2022, the USSS seized $28,730.22 from PNC Bank account number **-****-5951 held in the name of Moseley Medical Services LLC. The PNC Bank account was opened on September 9, 2021, by T. Moseley as an S corporation LLC. The LLC is registered in Delaware. The only deposits in the LLC's account in December 2021 were a mobile deposit of $250 on December 1, 2021, and the $30,032.00 deposit from the Ashley Property Management LLC account on December 7, 2021.

On May 9, 2022, the USSS seized $148,380.00 from PNC Bank account number **-****-8709 held in the name of A Smith Consulting LLC. The PNC Bank account was opened on August 20, 2021, by M. A. Smith as an LLC. The only deposit in the LLC's account in December 2021 was from the check issued by C.T. from the JPM Account.

## PROCEDURAL BACKGROUND

On August 3, 2022, the Government filed its verified complaint for forfeiture *in rem*, alleging that the defendant funds were subject to forfeiture to the Government pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C), on the grounds that the defendant funds constituted or were derived from proceeds traceable to violations of 18 U.S.C. § 1343.  On August 8, 2022, based on the allegations of the complaint, the Clerk of the Court issued a Warrant for Arrest of Articles *In Rem* for the defendant funds.  (Doc. 3.)  The warrant was executed on November 15, 2022.  (Doc. 8.)

According to the Government's Declaration of Publication, a Notice of Civil Forfeiture was published on the official government internet site www.forfeiture.gov for thirty days beginning on August 9, 2022. (Doc. 4).

In addition to providing notice by publication, the Government also caused the following entities to be served with notice of the verified complaint, warrant for arrest, order setting mandatory scheduling conference, standing order, and court notices:  (1) Trucking Logistics, LLC; (2) Byrons Property Management, LLC; (3) Juliette Property Management, LLC; (4) A Smith Consulting, LLC;

(5) Glory Denim, LLC; (6) Ashley Property Management, LLC; and (7) Moseley Medical Services, LLC.

   Trucking Logistics, LLC

   On November 18, 2022, the USSS personally served copies of the verified complaint and related pleadings on Joel Eugene Jackson, the Registered Agent for Service of Process for Trucking Logistics, LLC, at 1201 Solomon Street, Building 6, #112, Johnstown, Pennsylvania, 15902. (Doc. 12; Doc. 19-1, Declaration of Elisa Rodriguez ("Rodriguez Decl.") at ¶ 10, Exhibit F.)

   Byrons Property Management, LLC

   On August 15, 2022, the Government mailed copies of the above-listed documents to Byron Spencer, the Registered Agent for Service of Process for Byrons Property Management, LLC, at 216 Coolidge Ave, Apt 2B, Trenton, New Jersey, 08618-2923, by first class mail and certified mail number 7020 2450 0001 1916 8194. The PS Form 3811 "green card" was returned unsigned to the United States Attorney's Office. According to the official U.S. Postal Service website, the tracking status of the certified mail parcel as of August 22, 2022, showed "In Transit to Next Facility." Neither the first-class mail nor certified mail parcels were returned to the U.S. Attorney's Office. (Doc. 19-1, Rodriguez Decl. at ¶ 8, Ex. D.)

   On November 17, 2022, the USSS personally served the above-listed documents on Erin Martin, Byron Spencer's girlfriend, a person of suitable age and discretion, residing in Byron Spencer's usual place of abode at 402 Cheyenne Way, Reynoldsburg, Ohio, 43068. (Doc. 11; Doc. 19-1, Rodriguez Decl. at ¶ 9, Ex. E.)

   Juliette Property Management, LLC

   On December 7, 2022, the USSS personally served copies of the above-listed documents on Juliette Jackson, the Registered Agent for Service of Process for Juliette Property Management, LLC, at 1027 Marlyn Road, Philadelphia, Pennsylvania, 19151.  (Doc. 15; Doc. 19-1, Rodriguez Decl. at ¶ 14, Ex. J.)

   A Smith Consulting, LLC

   On August 15, 2022, the Government mailed copies of the above-listed documents to Michael A. Smith, on behalf of A Smith Consulting, LLC, at 134 Longfield Ct, East Brunswick, New Jersey,

08816-1831, by first class mail and certified mail number 7020 2450 0001 1916 8231. The PS Form 3811 "green card" was returned unsigned to the United States Attorney's Office. According to the official U.S. Postal Service website, the tracking status of certified mail parcel shows that the certified mail parcel was delivered to an individual at the address on August 18, 2022. (Doc. 19-1, Rodriguez Decl. at ¶ 11, Ex. G.)

On December 6, 2022, the USSS personally served the above-listed documents on Anthony Smith, Michael A. Smith's brother, a person of suitable age and discretion, residing in Michael A. Smith's usual place of abode at 2701 Yewdall Terrace, Apt. 3B, Philadelphia, Pennsylvania, 19143. (Doc. 13; Doc. 19-1, Rodriguez Decl. at ¶ 12, Ex. H.)

Glory Denim, LLC

On December 6, 2022, the USSS personally served copies of the above-listed documents on Sharetta James, the Registered Agent for Service of Process for Glory Denim, LLC, at 1301 Sellers, Philadelphia, Pennsylvania, 19124. (Doc. 14; Doc. 19-1, Rodriguez Decl. at ¶ 13, Ex. I.)

Ashley Property Management, LLC

On August 26, 2022, the USSS personally served copies of the complaint, warrant for arrest, order setting mandatory scheduling conference, standing order, and court notices on Ashley June, the Registered Agent for Service of Process for Ashley Property Management, LLC, at 4508 Longshore Avenue, Philadelphia, Pennsylvania 19135. (Doc. 9; Doc. 19-1, Rodriguez Decl. at ¶ 5, Ex. A.)

Moseley Medical Services, LLC

On August 15, 2022, the Government mailed copies of the above-listed documents to Talia Moseley, the Registered Agent for Service of Process for Moseley Medical Services, LLC, at 1008 Salem Road, Cherry Hill, New Jersey, 08034-3656, by first class mail and certified mail number 7020 2450 0001 1916 8217. The first-class mail parcel was returned to the U.S. Attorney's Office marked as "Return to Sender," "Not Deliverable as Addressed," and "Unable to Forward." The certified mail parcel was returned to the U.S. Attorney's Office with "refused – 8/18/22 no one by that name lives here" written upon the parcel. (Doc. 19-1, Rodriguez Decl., ¶ 6, Ex. B.)

On September 12, 2022, the USSS personally served the above-listed documents on Charles Moseley, Talia Moseley's father, a person of suitable age and discretion, residing in Talia Moseley's

1  usual place of abode at 1010 Darley Road, Wilmington, Delaware, 19810. (Doc. 10;  Doc 19-1,

2  Rodriguez Decl. at ¶ 7, Ex. C.)

3         To date, neither the entities: Trucking Logistics, LLC, Byrons Property Management, LLC,

4  Juliette Property Management, LLC, A Smith Consulting, LLC, Glory Denim, LLC, Ashley Property

5  Management, LLC, and Moseley Medical Services, LLC, nor any other potential claimant, filed an

6  answer or otherwise defended the action.  The Clerk of the Court entered default as to potential

7  claimants Trucking Logistics, LLC, Byrons Property Management, LLC, Juliette Property

8  Management, LLC, A Smith Consulting, LLC, Glory Denim, LLC, Ashley Property Management,

9  LLC, and Moseley Medical Services, LLC on March 10, 2023.  (Docs. 21, 22.)  The Government

10  moved for default judgment on April 7, 2023.  (Doc. 25.)

11  **DISCUSSION**

12     **I.**      **Sufficiency of the Complaint**

13         The Government contends that the allegations set forth in the verified complaint establish that

14  the funds seized from the Bank of America and PNC Bank Accounts are subject to forfeiture to the

15  Unites States pursuant to 18 U.S.C. § 981(a)(1)(C).  (Doc. 25 at p. 12.)  A complaint's sufficiency is a

16  factor to consider when deciding whether to grant default judgment.  *Eitel v. McCool*, 782 F.2d 1470,

17  1471 1472 (9th Cir. 1986).  Property (real or personal) is subject to forfeiture if it constitutes or is

18  derived from proceeds traceable to any offense constituting "specified unlawful activity" as defined in

19  18 U.S.C. § 1956(c)(7), which incorporates the definition of "specified unlawful activity" found in 18

20  U.S.C. § 1961(1). 18 U.S.C. § 981(a)(1)(C). Wire fraud in violation of 18 U.S.C. § 1343, constitutes

21  "specified unlawful activity" as defined in § 1956(c)(7) and as incorporated by § 1961(1).[2]

22

23  ---

24  [2] Section 1343 provides:

25       Whoever, having devised or intending to devise any scheme or artifice to defraud, or for

26  obtaining money or property by means of false or fraudulent pretenses, representations, or
promises, transmits or causes to be transmitted by means of wire, radio, or television
communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds

27  for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned
not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit

28  authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a
presidentially declared major disaster or emergency (as those terms are defined in section 102 of
the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or

9

The Government's verified complaint alleges that the defendant funds were derived from proceeds traceable to wire fraud in violation of 18 U.S.C. § 1343, a specified unlawful activity. According to the Government, the uncontested facts are of a business email compromise scheme in which Kings County received an email purportedly from BCI requesting electronic payments of funds to the JPM Account for its construction services. Following the email, Kings County wired the funds to the JPM Account controlled by C.T. and then disbursed the funds to the accounts at Bank of America and PNC Bank rather than the intended recipient, BCI. Law enforcement investigated the non-payment to BCI and determined that the use of an email similar to that of BCI's CEO caused Kings County to send the funds to the JPM Account maintained by C.T. who in turn disbursed the funds to the LLCs identified in the complaint. (Doc. 1, ¶¶ 10-25 (tracing of defendant funds from JPM Account to seized accounts at Bank of America and PNC Bank).

The verified complaint meets the requirements of Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, in that it is verified; states the grounds for subject matter jurisdiction, *in rem* jurisdiction, and venue; describes the property seized and the circumstance of its seizure; and identifies the relevant statutes. In the absence of assertion of interests in the defendant funds, this Court is not in a position to question the facts supporting forfeiture of those funds.  As alleged, the facts set forth a sufficient connection between the defendant funds and wire fraud to support forfeiture.

## II.    Notice Requirements

The Fifth Amendment's Due Process Clause prohibits the Government from deprivation of property without "due process of law."  Individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard."  *United States v. James Daniel Good Real Property*, 510 U.S. 43, 48, 114 S. Ct. 492 (1993).  The Government contends that it provided required notice for the forfeiture of the defendant funds.

///

///

---

affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

### A.    Notice by Publication

Supplemental Rule G(4) sets forth the rules for publication of the notice of action in federal forfeiture proceedings.  Rule G(4)(a)(iv)(C) provides that in lieu of newspaper publication, the Government may publish notice by "posting notice on an official internet government forfeiture site for at least 30 consecutive days."  Here, publication occurred on the official internet government forfeiture website (www.forfeiture.gov) for 30 consecutive days beginning on August 9, 2022.  The Government filed its Declaration of Publication on September 9, 2022.  (Doc. 4.)

### B.    Personal Notice

 When the Government knows the identity of the property owner, due process requires "the Government to make a greater effort to give him notice than otherwise would be mandated" by publication. *United States v. Real Property*, 135 F.3d 1312, 1315 (9th Cir. 1998).  In such cases, the Government must attempt to provide actual notice by means reasonably calculated under all circumstances to apprise the owner of the pendency of the forfeiture action.  *Dusenbery v. United States*, 534 U.S. 161, 168 (2002) (quotations omitted).  "Reasonable notice, however, requires only that the government attempt to provide actual notice; it does not require that the government demonstrate that it was successful in providing actual notice."  *Mesa Valderrama v. United States*, 417 F.3d 1189, 1197 (11th Cir. 2005).

Supplemental Rule G(4)(b)(iii)(A) mirrors this requirement, providing for notice to be "sent by means reasonably calculated to reach the potential claimant."  Additionally, this Court's Local Rule 540 addresses notice to persons known to have an interest in property subject to forfeiture.  The rule requires that a party seeking default judgment in an action *in rem* to show to the Court's satisfaction that due notice of the action and arrest of the property has been given by: (1) publication; (2) by personal service on the person having custody of the property; (3) if the property is in the hands of a law enforcement officer, by personal service on the person having custody prior to its possession by law enforcement agency or officer; and (4) by personal service or certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.  Local Rule 540(a).

Notwithstanding the Supplemental Rules and Local Rule 540(a), the Government provides sufficient notice if such notice complies with Federal Rule of Civil Procedure 4 requirements. *See* Fed. R. Civ. P. 4(n)(1).

In this case, the Court finds that Government either gave actual notice to, or made diligent attempts to provide actual notice to, the entity claimants. As detailed above, in addition to completing service by publication, the Government sent notice by first class and certified mail to Moseley Medical Services, LLC, Byrons Property Management, LLC, and A Smith Consulting, LLC on August 15, 2022. The Government personally served the registered agent for Ashley Property Management, LLC on August 26, 2022, Trucking Logistics, LLC on November 18, 2022, Glory Denim, LLC on December 6, 2022, and Juliette Property Management on December 7, 2022. The Government effectuated substituted service on the registered agent for Moseley Medical Services, LLC on September 12, 2022, Byrons Property Management, LLC on November 17, 2022, and A Smith Consulting, LLC on December 6, 2022.

### C.    Failure to File Claim or Answer

Supplemental Rule G(5) requires any person who asserts an interest in or right against the defendant funds to file a claim with the Court within 35 days after service of the Government's complaint or 30 days after the final day of publication on an official internet government forfeiture site. Supplemental R. G(4)(b) & (5). Failure to comply with the procedural requirements for opposing the forfeiture precludes a person from establishing standing as a party to the forfeiture action. *Real Property*, 135 F.3d at 1317.

Here, more than 30 days have passed since the final day of publication, and more than 35 days have passed since notice was mailed and/or served on Trucking Logistics, LLC, Byrons Property Management, LLC, Juliette Property Management, LLC, A Smith Consulting, LLC, Glory Denim, LLC, Ashley Property Management, LLC, and Moseley Medical Services, LLC. There have been no claims filed by or on behalf of these entities with respect to this action. The Clerk of Court properly entered defaults against Trucking Logistics, LLC, Byrons Property Management, LLC, Juliette Property Management, LLC, A Smith Consulting, LLC, Glory Denim, LLC, Ashley Property Management, LLC, and Moseley Medical Services, LLC. (Docs. 21, 22.)

1    **D.      Default Judgment**

2          The Government seeks judgment against the interests of Trucking Logistics, LLC, Byrons

3    Property Management, LLC, Juliette Property Management, LLC, A Smith Consulting, LLC, Glory

4    Denim, LLC, Ashley Property Management, LLC, and Moseley Medical Services, LLC, and final

5    forfeiture judgment to vest in the Government all right, title and interest in the defendant funds.

6          Federal Rule of Civil Procedure 55 provides that a court has discretion to enter default

7    judgment against a party after the clerk has entered the party's default.  In considering whether to enter

8    default judgment, the court considers the following factors: (1) the possibility of prejudice to the

9    plaintiff if relief is denied; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the

10   complaint; (4) the sum of money at stake; (5) the possibility of a dispute concerning material facts; (6)

11   whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the

12   merits.  *See Eitel*, 782 F.2d at 1471-72.

13         Here, the *Eitel* factors favor the granting of the Government's *ex parte* motion for default

14   judgment.  First, the Government would be prejudiced by the denial of its motion because the

15   Government would otherwise have to expend additional time and effort litigating an action in which

16   no claimants have appeared.  Second, the Government's claims appear to have merit.  Third, as

17   discussed above, the Government has adhered to the procedural requirements of a forfeiture action,

18   including the filing of a sufficient complaint.  Fourth, the sum of money in dispute here is not

19   substantial enough to warrant the denial of the Government's motion.  Fifth, there are no genuine

20   disputes as to any material fact.  Sixth, it does not appear that the failure of any claimant to answer is

21   due to excusable neglect.  And finally, although it is always preferable to decide a case on its merits, it

22   is not practicable here where no claimant has appeared to oppose the Government's claims.

23                          **CONCLUSION AND RECOMMENDATION**

24         For the reasons discussed above, it is HEREBY RECOMMENDED as follows:

25         1.      The Government's ex parte motion for entry of default judgment against the interests of

26                 Trucking Logistics, LLC, Byrons Property Management, LLC, Juliette Property

27                 Management, LLC, A Smith Consulting, LLC, Glory Denim, LLC, Ashley Property

28                 Management, LLC, and Moseley Medical Services, LLC be GRANTED; and

13

2.     The Clerk of the Court be directed to enter a final judgment of forfeiture pursuant to 18

U.S.C. § 981(a)(1)(C), forfeiting all right, title, and interest in the defendant funds to

the United States to be disposed of according to law.

These Findings and Recommendations will be submitted to the United States District Judge

assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after being

served with these findings and recommendations, the parties may file written objections with the

Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  The parties are advised that the failure to file objections within the specified time

may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.

*Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391,

1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __May 11, 2023__                    ___/s/ Barbara A. McAuliffe___

                                            UNITED STATES MAGISTRATE JUDGE

14